UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
MARKEISHA DESOUZA,

                 Plaintiff,

       - against -

OFFICE OF CHILDREN AND FAMILY
SERVICES, JOHN AND JANE DOES 1–10,
and XYZ CORP. 1–10,

                 Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-2463 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

Plaintiff Markeisha Desouza ("Plaintiff") initiated this action on April 26, 2018, asserting causes of action under Title VII of the Civil Rights Act of 1964 and New York state law against Defendants Office of Children and Family Services ("OCFS"), John and Jane Does 1–10, XYZ Corporations 1–10 (collectively, "Defendants"), as well as New York State, the Ella McQueen Reception Center for Boys and Girls ("the Ella McQueen Center"), Emanuel Thomas ("Thomas"), and Edward Figueroa, Jr. ("Figueroa"). (*See* Complaint, Dkt. 1, at ECF[1] 1.) An amended complaint was filed on July 18, 2018. (*See generally* Amended Complaint, Dkt. 11.) On October 3, 2018, following a pre-motion conference concerning Defendants' intention to file a motion to dismiss, Plaintiff filed a second amended complaint ("SAC"), dropping her state law claims and her claims against the Ella McQueen Center, Thomas, and Figueroa, leaving only her Title VII claims as to Defendants OCFS, John and Jane Does 1–10, and XYZ Corporations 1–10. (SAC, Dkt. 16.) The SAC is the operative complaint in this matter.

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Currently before the Court is Defendants' motion to: (1) dismiss Plaintiff's third cause of action, which seeks relief for "gender discrimination and harassment in violation of Title VII"; and (2) strike a new factual allegation in Paragraph 26 of the SAC. (Defendants' Motion to Dismiss, Dkt. 20.) For the reasons stated herein, Defendants' motion is granted in full and the Court orders Plaintiff to file a Third Amended Complaint.

## BACKGROUND[2]

On October 26, 2016, Plaintiff started working for Defendant OCFS as a Youth Division Aide 3 at the Ella McQueen Center. (SAC, Dkt. 16, ¶ 21.) In November 2016, OCFS transferred Thomas to the Ella McQueen Center, and he began several months of training to become a Youth Counselor 1. (*Id.* ¶¶ 23–24.) Shortly after his transfer, Thomas approached Plaintiff to inform her that he was "single" and that he "wanted to take [Plaintiff] out and get to know her." (*Id.* ¶ 25.) He also asked whether Plaintiff had an extra room in her house so that he could stay with her. (*Id.*) During Plaintiff's employment at the Ella McQueen Center, Thomas repeatedly touched Plaintiff on her shoulder, and once stood beside Plaintiff, while she was seated, with his pant zipper open. (*Id.* ¶ 27.)

After these interactions with Thomas, Plaintiff complained to Figueroa, a Facility Director and supervisor at the Ella McQueen Center. (*Id.* ¶ 29.) Figueroa subsequently told Plaintiff that he had directed Thomas not to speak to her unless a witness was present. (*Id.* ¶ 32.) Figueroa's direction was not enforced, however, and Thomas continued to speak privately with Plaintiff and frequently stared at her in a confrontational and intimidating manner. (*Id.* ¶¶ 33–34.) No further actions were taken to address Thomas's behavior. (*Id.* ¶ 33.) Though he initially instructed

---

[2] The facts recited in this Section are based on the allegations in the SAC, which the Court accepts as true for purposes of Defendants' motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Plaintiff to complete and submit a complaint form documenting her interactions with Thomas, Figueroa later told Plaintiff's union representative that Plaintiff should not file a formal complaint or grievance based on Thomas's behavior. (*Id.* ¶¶ 30–31, 35.) Moreover, when Plaintiff did submit a completed complaint form, Figueroa refused to file it. (*Id.* ¶¶ 35–36.)

On March 1, 2017, Figueroa assigned Thomas to be Plaintiff's direct supervisor, despite his knowledge of Thomas's behavior towards Plaintiff and Plaintiff's express objection. (*Id.* ¶¶ 38, 40–41.) As Plaintiff's supervisor, Thomas was responsible for processing Plaintiff's timesheets. (*Id.* ¶ 42.) Thomas abused his supervisory authority by intentionally failing to process Plaintiff's timesheets, which meant that Plaintiff went unpaid for her time. (*Id.* ¶ 43.) Thomas's continuous physically and verbally aggressive behavior towards Plaintiff caused her to be "in constant fear" of him. (*Id.* ¶¶ 44–46.)

On June 5, 2017, Plaintiff was assigned to a "one-to-one" with a youth on suicide watch at the Ella McQueen Center. (*Id.* ¶ 47.) Plaintiff had previously been concerned about the youth's aggression towards staff and other youth, and when Plaintiff arrived at work that day, she saw that the youth was agitated and restrained by other staff members. (*Id.* ¶¶ 48–50.) Plaintiff approached the youth while other staff members were restraining him, but the other staff members pushed Plaintiff out of the way. (*Id.* ¶¶ 51–52.) Based on this incident, OCFS falsely accused Plaintiff of "charging after the youth." (*Id.* ¶¶ 53, 55.) This was Plaintiff's only recorded violation while employed at the Ella McQueen Center. (*Id.* ¶ 57.) Although Plaintiff was later informed by the New York State Justice Center that employees should not be terminated for this type of violation, OCFS terminated her on June 12, 2017. (*Id.* ¶¶ 56–57, 59.) Plaintiff alleges that OCFS used this "charging" incident as a pretext for her termination; she believes that she was actually terminated in retaliation for complaining about sexual harassment by Thomas. (*Id.* ¶¶ 58–61.)

3

On June 13, 2017, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR") charging Defendants with sexual harassment and retaliation in violation of New York Executive Law § 296 and Title VII. (*Id.* ¶ 18.) The verified complaint was dual-filed with the Equal Employment Opportunity Commission ("EEOC"), which issued a Right to Sue Notice on January 26, 2018. (*Id.* ¶ 19; *see also* Right to Sue Notice, Dkt. 16, at ECF 16.)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94–95 (2d Cir. 2013) (considering congressional intent to determine whether the complaint sufficiently alleged proximate cause). In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Additionally, a court "need not feel

4

constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

At the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint." *Id.* at 404 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir.1991)). Thus, in employment discrimination cases, courts may consider filings with state administrative agencies or the EEOC to the extent that a complaint necessarily rests upon them. *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("'[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC' and other documents related to the plaintiff's claim . . . so long as those filings are . . . 'integral to' and 'solely relied' upon by the complaint." (brackets omitted) (quoting *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d. Cir. 2006))).

## DISCUSSION

### I. Defendants' Motion to Dismiss Plaintiff's Third Cause of Action

Plaintiff asserts the following causes of action under Title VII: (1) "Sexual Harassment"; (2) "Hostile Work Environment"; (3) "Gender Discrimination and Harassment"; and (4) "Retaliation."[3] (SAC, Dkt. 16, at ¶¶ 62–77.) Defendants seek dismissal of Plaintiff's third cause of action for gender discrimination and harassment. (*See* Defendants' Memorandum of Law

---

[3] Despite their different headings, Plaintiff's first and second causes of action plead identical allegations. (*Compare* SAC, Dkt. 16, ¶¶ 62–65, *with id.* ¶¶ 66–69.)

5

("Defs.' Br."), Dkt. 21, at 1.) They argue that Plaintiff has not alleged facts sufficient to state a claim for disparate treatment on the basis of sex or gender and that, in any case, Plaintiff failed to administratively exhaust such a claim. (*See id.* at 5–10.) As explained below, Defendants are correct that Plaintiff has failed to state a claim of disparate treatment, as distinct from her claims of sexual harassment and hostile work environment.[4]

A. **Gender Discrimination Claims Under Title VII**

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions[,] or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). This provision requires that "gender . . . be irrelevant to employment decisions," *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989), and allows claims of discrimination to rest on a number of factual grounds. The archetypal claim of discrimination in violation of Title VII is a claim of "disparate treatment," which occurs when an employer treats some employees less favorably than others because of their gender. *See United States v. Brennan*, 650 F.3d 65, 89–90 (2d Cir. 2011); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). In addition to disparate treatment, the Supreme Court has recognized that *quid pro quo* sexual harassment and hostile work environment are forms of gender discrimination prohibited by Title VII, and such practices furnish independent causes of action. *See Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) ("[I]t is established 'without question, that when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex.'" (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (alterations omitted))); *see also Vinson*, 577 U.S. at 65 ("[S]exual misconduct constitutes prohibited 'sexual harassment,'

---

[4] Because the Court finds that Plaintiff has not stated a viable claim for disparate treatment, it need not consider Defendants' argument that Plaintiff failed to administratively exhaust that claim.

6

whether or not it is directly linked to the grant or denial of an economic *quid pro quo*, where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" (quoting 29 C.F.R. § 1604.11(a)(3))).

Though claims challenging disparate treatment, *quid pro quo* sexual harassment, and hostile work environment are all claims of gender discrimination, they are distinct causes of action governed by different analytical standards. For example, to state a claim of gender discrimination based on *quid pro quo* sexual harassment, a plaintiff must allege that her employer took "a tangible employment action" because of her "refusal to submit to a supervisor's sexual demands." *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998)). And to state a claim for a hostile work environment,

> a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex."

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)). On the other hand, a gender discrimination claim based on disparate treatment requires a plaintiff to plead facts that would tend to show "that the defendant had a discriminatory intent or motive for taking a job-related action." *Brennan*, 650 F.3d at 90 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). The differing analytical standards governing each theory of gender discrimination mean that allegations sufficient to establish one claim, *e.g.*, disparate treatment, do not necessarily support an action based on another claim, *e.g.*, hostile work environment.

### B. Plaintiff's Allegations of Disparate Treatment

In this case, Plaintiff's third cause of action for "Gender Discrimination and Harassment" alleges that Defendants "creat[ed] and maintain[ed] discriminatory working conditions and a hostile work environment, discriminat[ed] against Plaintiff because of her sex/gender," and "engag[ed] in, perpetuat[ed,] and permit[ed] . . . discriminatory employment practices in which Plaintiff's sex/gender was the motivating, if not the only factor." (SAC, Dkt. 16, ¶¶ 72–73.) Defendants characterize this cause of action as alleging a disparate treatment claim, which Plaintiff does not appear to dispute. (*See* Defs.' Br., Dkt. 21, at 10 (stating that "Plaintiff's disparate treatment claim should be dismissed"); September 5, 2018 Pre-Motion Conference Transcript ("PMC Transcript"), Dkt. 25, at 7:5–7 (statement by Plaintiff's counsel that "we do strongly believe that she was treated differently because she was targeted by a male supervisor because of her gender").) Defendants argue that Plaintiff has failed to state a viable cause of action for disparate treatment because she has not alleged that Defendants took an adverse employment action against her on the basis of her gender. (Defs.' Br., Dkt. 21, at 5–10.) Plaintiff responds that "Thomas targeted [her] and sexually harassed her because she is a woman," and thus, "her sexual harassment claim and gender discrimination claim are entangled." (Plaintiff's Brief in Opposition ("Pl.'s Opp."), Dkt. 19, at 14.)

As her opposition brief suggests, Plaintiff has improperly conflated the cause of action for hostile work environment with a cause of action for disparate treatment. "Whereas hostile work environment claims consider the 'workplace environment as a whole,' disparate treatment claims require a tangible, 'discrete harm such as hiring or discharge.'" *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 553 (S.D.N.Y. 2014) (alterations omitted) (quoting *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001)). A plaintiff alleging disparate treatment must plead facts showing that: "'(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an

8

adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). To show that the circumstances surrounding an adverse employment action give rise to an inference of discrimination, the plaintiff may point, *inter alia*, to discriminatory statements, *see Garcia v. Barclays Capital, Inc.*, 281 F. Supp. 3d 365, 376 (S.D.N.Y. 2017) (citing *Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015)), or to the treatment of similarly situated employees, *see Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 536 (S.D.N.Y. 2002).

Plaintiff has not alleged facts sufficient to establish the elements of a claim of gender discrimination based on disparate treatment. Though Plaintiff has adequately pleaded that Defendants created and maintained a hostile work environment, that is not an adverse action for the purpose of pleading the elements of a disparate treatment claim. *See Saliga v. Chemtura Corp.*, No. 12-CV-832 (VAB), 2015 WL 5822589, at *7 (D. Conn. Oct. 1, 2015) ("[I]n the context of disparate treatment claims, the creation of a hostile work environment cannot constitute an adverse employment action for purposes of establishing a *prima facie* case of discrimination." (citing *Parra*, 48 F. Supp. 3d at 553)); *cf. Nichols v. Truscott*, 424 F. Supp. 2d 124, 139 (D.D.C. 2006) (finding that although a Title VII claim involved "abuse at the hands of [the plaintiff's] co-workers

9

(coupled with her employer's failure to stop the harassment)," it did "not [involve] an adverse action by her employer"). Furthermore, while Plaintiff's termination on June 12, 2017 obviously qualifies as an adverse employment action, Plaintiff has alleged that she was terminated "in retaliation for her complaints of unlawful sexual harassment"—not that she was terminated because of her gender. (SAC, Dkt. 16, ¶ 59.) Because the SAC contains no plausible allegations that any Defendant took an adverse employment action against Plaintiff under circumstances that suggest the action was taken because of Plaintiff's gender, Plaintiff cannot maintain a claim of disparate treatment against Defendants. Accordingly, Plaintiff's third cause of action is dismissed.

## II. Defendants' Motion to Strike Paragraph 26 of the SAC

As part of their motion to dismiss, Defendants also move to strike Paragraph 26 of the SAC. (*See* Defs.' Br., Dkt. 21, at 10–11.) Paragraph 26 alleges that "[u]pon information and belief, Thomas engaged in similar conduct with other female employees at OCFS." (SAC, Dkt. 16, ¶ 26.) By "similar conduct," Paragraph 26 refers to Thomas's statements to Plaintiff that "he was 'single,' that he 'would like to get to know [her],' and that he 'wanted to take her out and get to know her,'" as well as his inquiry about whether Plaintiff had "'an extra room in her house' so he [could] stay with her." (*Id.* ¶ 25.) Defendants argue that the addition of Paragraph 26's allegations to the SAC exceeded Plaintiff's leave to amend. (Defs.' Br., Dkt. 21, at 10–11.)

Motions to strike are generally disfavored. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Nevertheless, a district court may strike new factual allegations in an amended complaint when the allegations exceed the scope of the Court's permission to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." (collecting cases)); *see also*

*Miles v. City of New York*, No. 14-CV-9302 (VSB), 2018 WL 3708657, at *5 (S.D.N.Y. Aug. 3, 2018) (striking newly-asserted causes of action that fell outside of the scope of leave to amend); *Jun Kong v. Wing Keung Enters., Inc.*, No. 15-CV-6228 (RJD) (LB), 2017 WL 6025281, at *6 (E.D.N.Y. Aug. 9, 2017) (striking unauthorized factual allegations).

At the pre-motion conference on September 5, 2018, the Court and the parties discussed the sufficiency of Plaintiff's pleadings at length. At the conclusion of the hearing, the Court and Plaintiff's counsel engaged in the following colloquy:

> MR. DERMESROPIAN: I would ask to be granted at least maybe seven days to consult with my client just to make sure she's aware. I don't like to make a decision on the spot without her being aware.
>
> THE COURT: Absolutely.
>
> MR. DERMESROPIAN: And I would advise my client about the Court's statements and opinion and the Court's view, and assuming everything goes smoothly, we will amend the second time, if that's okay with Your Honor. So I'm asking for leave—I'm asking for seven days to file an amended complaint to, you know, streamline through some of the points, some of [the] issues, maybe make it more straightforward, and then if there's anything left, despite Your Honor's comments, defense counsel still has the right to move.
>
> THE COURT: Well, let's do this: I'll give you two weeks to let me know whether or not you intend to withdraw some of these claims that I've indicated would be dismissed. And then dismiss as to certain Defendants.
>
> . . . .
>
> Now, when you say seeking to amend the complaint again, <u>the only basis on which I would say you should amend again is if you intend to withdraw some of the claims</u> and, therefore, want to, as you said, streamline it. <u>But what I don't want you doing is adding more facts or allegations in an attempt to cure this</u>, because we already did that once, and it doesn't seem fair to the defense to keep giving you another chance just to correct the problems as they're identified. And I haven't heard you suggest to me today that there are other facts that you think might save the claims that I'm saying are at risk that you didn't include in the amended complaint. Because that was the purpose of amending before.
>
> . . . .

11

> MR. DERMESROPIAN: <u>That's correct, Your Honor. We're not looking to add new facts or allegations</u>, we're only looking to clean it up, so to [speak], pursuant to the Court's comments.

(PMC Transcript, Dkt. 25, at 26:20–28:23 (emphasis added).)

In light of this exchange, Plaintiff clearly exceeded her leave to amend by adding the new factual allegations in Paragraph 26. Plaintiff argues that she represented in open court that she had "some beliefs" that she "didn't feel confident putting in the complaint right away." (Pl.'s Opp., Dkt. 19, at 16 (quoting PMC Transcript, Dkt 25, at 28:24–29:7).) Plaintiff appears to believe that, in light of this representation, the Court granted tacit approval of the inclusion of such facts in her SAC. (*See id.*) The Court clearly indicated, however, that the SAC should not "add[] more facts or allegations in an attempt to cure" deficiencies with Plaintiff's existing causes of action. (PMC Transcript, Dkt. 25, at 28:7–28:8.) To the extent that Plaintiff had not included certain allegations in her complaints up to that point, the Court stated that "[i]f discovery yields additional facts that support certain claims that are withdrawn or brand new, you obviously can seek leave to amend." (*Id.* at 29:15–29:17.) As no discovery has occurred and Plaintiff has not sought leave to add a new cause of action or re-assert a previously withdrawn cause of action, the inclusion of new factual allegations in Paragraph 26 went beyond the scope of Plaintiff's leave to amend. Accordingly, the Court orders that Paragraph 26 be stricken from the SAC.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss Plaintiff's third cause of action and to strike the allegations in Paragraph 26 of the SAC is granted in full. Plaintiff shall file a Third Amended Complaint within seven (7) days of this Order, excising Plaintiff's third cause of action and Paragraph 26.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 12, 2019
       Brooklyn, New York